IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


SUSAN DICHTER                       :          CIVIL ACTION
                                    :
    v.                             :
                                    :
CITY OF PHILADELPHIA et al.         :          NO. 14-5611

<u>MEMORANDUM</u>

Dalzell, J.                                                April 1, 2015

      Susan Dichter sued the City of Philadelphia (the "City") and Public Health Management Corp. ("PHMC") over the circumstances surrounding her February 3, 2012 termination.  Both defendants seek dismissal of all claims.  Dichter opposes both motions and, in the alternative, seeks leave to amend her complaint a second time pursuant to Fed. R. Civ. P. 15.  For the reasons detailed below, we will grant the City's motion to dismiss as to Count I (breach of contract); Count VI (conspiracy to deprive plaintiff of her civil rights in violation of 42 U.S.C. § 1983); Count VII (violation of City Charter and Civil Service regulations); Count VIII (wrongful discharge); Count XI (Due Process violation) and Count XII (civil conspiracy) and deny its motion as to Count IV (First Amendment retaliation).  We will grant PHMC's motion as to Count II (breach of contract); Count V (conspiracy to deprive plaintiff of her civil rights in violation of 42 U.S.C. § 1983); Count IX (wrongful discharge); Count X (Due Process violation); and Count XIII (civil conspiracy) and deny its motion as to Count III (First Amendment retaliation).  We will also deny Dichter's motion to amend.

      We have federal question jurisdiction over the plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983, and over her supplemental state claims pursuant to 28 U.S.C. § 1367.

# I.       Legal Standard

## A.       Motion to Dismiss

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that a plaintiff has failed to state a claim for relief, see Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint and "[t]he question, then, is whether the facts alleged in the complaint, even if true, fail to support the claim."  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal citation and quotation marks omitted).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678.

Our Court of Appeals requires district courts considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) to engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiff, and all inferences must

be drawn in her favor.  See McTernan v. City of York, PA, 577 F.3d 521, 526 (3d Cir. 2009)

(internal quotation marks omitted).  To survive a motion to dismiss, a plaintiff must allege facts

that "raise a right to relief above the speculative level on the assumption that the allegations in

the complaint are true (even if doubtful in fact)."  Victaulic Co. v. Tieman, 499 F.3d 227, 234

(3d Cir. 2007) (quoting Twombly, 550 U.S. at 555).

### B.    Leave to Amend

Fed. R. Civ. P. 15(a)(2) requires a party to seek leave from the Court or the opposing

party to amend its pleading more than once and urges us to "freely give leave when justice so

requires."  But we may deny leave to amend when special circumstances "such as undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, [or] futility of amendment" are evident.  Foman v. Davis, 371 U.S. 178, 182

(1962).  The decision to grant leave is within the Court's discretion.  In re Burlington Coat

Factory Sec. Litig., 114 F.3d. 1410, 1434 (3d Cir. 1997).   However, any refusal to grant leave to

amend must be justified.  Id. (citing Foman, 371 U.S. at 182).

Futility exists when a complaint, as amended, would fail to state a claim upon which

relief could be granted.  Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008).  The same

standard determines the futility of an amendment as governs a Rule 12(b)(6) motion to dismiss,

that is, "if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to

amend, leave to amend generally must be granted unless the amendment would not cure the

deficiency."  Id.

II.     <u>**Factual and Procedural Background**</u>

We draw our recitation of the pertinent allegations from plaintiff's First Amended

Complaint, taking her allegations as true as we must.

Dichter alleges that in 2008 she became aware of a three-year $21 million grant from the

United States Department of Housing and Urban Development ("HUD") to fund the City's

Homeless Prevention and Rapid Re-Housing Program, or HPRP.  First Amended Complaint

("FAC") at ¶¶ 15, 16.  In January of 2009 she contacted Dainette Mintz, Deputy Managing

Director for the City who was responsible for overseeing the City's Office of Supportive Housing

("OSH"), the agency charged with policy and planning for the City's homeless programs, about

the HPRP grant.  FAC at ¶¶ 7, 17.  OSH employs 160 individuals, some directly and others in

arrangements with contractors -- including PHMC -- to disburse federal, state and city funds for

the alleviation of homelessness in Philadelphia.  <u>Id.</u> at ¶¶ 8, 9.  PHMC is a not-for-profit public

health institute that partners with governmental and non-governmental organizations to provide

public health services for communities.  <u>Id.</u> at ¶ 10.

In March of 2009 Mintz contacted Dichter and orally offered her the position of HPRP

Tracking Manager at OSH with a $75,000 annual salary plus benefits, to start on April 13, 2009,

which Dichter accepted.  <u>Id.</u> at ¶ 18.  On April 3, 2009, Mintz wrote to PHMC's Celeste Collins

to inform her that Dichter had been hired in that position, stating:

> Please allow this letter to serve as authorization for Ms. Susan
> Dichter to be hired as the Homeless Prevention Program Tracking
> Manager with the City of Philadelphia's Office of Supportive
> Housing.

<u>Id.</u> at ¶ 19, <u>see</u> <u>also</u> Ex. 1.[1]  The letter detailed Dichter's $75,000 salary, her start date, and the

fact that the City had interviewed her and felt she would be "an asset to our organization."  <u>Id.</u>

---

[1] Dichter stated in error that the letter was dated March 3, 2009.  FAC at ¶ 19.

Dichter contends that she filled out an application form with PHMC and received her paycheck and health benefits through PHMC but was nonetheless a City employee and that PHMC's role in her employment was "a sham," because she had no interaction or communication with PHMC during her nearly three years with OSH.  FAC at ¶¶ 20, 21.  Dichter contends that she was an employee of the City, working in a City office, on City business and under the supervision, direction and control of City employees and officials.  Id. at ¶ 20.  She also maintains that she was expected to adhere to City policies and standards of conduct.  Id.

She alleges that the City structured her employment in this manner to deny her the rights and benefits guaranteed under Article VII, Chapter 3 of the City Charter and terminated her in violation of her First and Fourteenth Amendment rights.  Id. at ¶¶ 23, 26.  Dichter also alleges that she was an outspoken critic about poor management and other issues beyond her responsibilities as Tracking Manager throughout her tenure at OSH.  Id. at ¶¶ 36, 37.  As a result, she claims she encountered hostility from a group of OSH employees including Deputy Director Letitia Egea-Hinton, Homeless Program Director Katrina Pratt-Roebuck, and Rhonda Sadler and Cheryl Ford.  Id. at ¶ 40.

Dichter believed her responsibilities to include: (1) reporting quarterly to HUD and the Commonwealth of Pennsylvania about the $21 million HPRP grant and related grants; (2) ensuring those reports complied with state and federal regulations -- that is, included complete and accurate information; and (3) reporting any fraud, waste or mismanagement.  Id. at ¶ 29.  She contends that she understood that the City would protect her from adverse or retaliatory treatment for such reporting.  Id.  She also alleges that "Joan Markum"[2], then-Chief Integrity Officer for the City, assured her in an OSH meeting that she and others were to report any fraud

---

[2] Notwithstanding plaintiff's spelling, the Chief Integrity Officer at the time was the late Joan Markman.

and that all staff involved in the HPRP grant were shielded from retaliation under federal, state and city "whistleblower" laws and ethics policies.  Id. at ¶ 30.

Dichter alleges that after the <u>Philadelphia Inquirer</u> ran a negative story in June of 2011 about a family shelter the City funded through OSH, she met with OSH Chief of Staff Joye Presson to express her concerns about that situation.  Id. at ¶¶ 41, 42.  In that meeting, Dichter contends, she also expressed concern about OSH's funding of SELF, Inc., a homeless service provider that had engaged in apparent fiscal mismanagement before dismissing two of its principals.  Id. at ¶ 43.  Dichter alleges she stated her concern that OSH had not picked up on the alleged mismanagement in its audits of SELF, Inc.  Id. at ¶ 44.  Dichter contends that Presson was upset and went to inquire further in the OSH fiscal department.  Id. at ¶ 45.  That afternoon Dichter met with Mintz who told Dichter she was aware of Dichter's conversation with Presson and expressed the view that the <u>Inquirer</u> article was inaccurate and unfair.  Id. at ¶ 46.

About two months later, Dichter learned that the two individuals dismissed from SELF, Inc. for fiscal mismanagement now operated a new entity, New Roads to Success, which also received OSH funding through a contract review committee that Presson chaired.  Id. at ¶¶ 47, 48.  In December of 2011, Dichter learned that the City's Chief Integrity Officer and a local television station had been informed that the two New Roads to Success principals had misappropriated homeless shelter funding.  Id. at ¶ 50.  Dichter also alleges she encountered delays regarding the Health Management Information System ("HMIS") used for the HUD reporting requirement, which she attributed to Pratt-Roebuck's "inadequacies."  Id. at ¶¶ 54, 56.

Dichter contends the New Roads revelation provoked anxiety among the individuals at OSH she identified as hostile to her, which, along with the HUD reporting difficulties, contributed to the retaliatory actions that led to her termination.  Id. at ¶¶ 52, 53, 57.

On January 11, 2012, plaintiff contacted Susan Krestge, Chief of Staff to Dr. Donald Schwartz, Managing Director of the City's Department of Health which oversaw OSH.  Id. at ¶ 58.  At this meeting, Dichter shared her concerns about fiscal mismanagement at OSH.  Id. at ¶ 60.  Krestge told plaintiff she would share those concerns and telephoned her later that day to advise that she had spoken with Schwartz and Kevin Vaughn, Integrity Officer at the Department of Health, who asked for a written report.  Id. at ¶ 62.  Dichter also spoke with Evan Meyers, Chief Legal Counsel of the City's Board of Ethics.  Id. at ¶ 63.

Dichter and Pratt-Roebuck attended a January 25, 2012 OSH staff meeting at which a budgeting error was discovered that resulted in the failure to allocate $327,000 of the HUD HPRP grant to any program despite its award to the City.  Id. at ¶¶ 65, 66.  After the meeting, Dichter mentioned her concern over the loss of the $327,000 grant to Presson.  Id. at ¶ 71.  Later that week, Dichter circulated an agenda and information for the weekly meeting, intending to discuss the reporting concerns, but Pratt-Roebuck cancelled the meeting by email.  Id. at ¶ 72.  Dichter alleges she replied, "Why—this needs to be handled," id. at ¶ 73, in response to which Pratt-Roebuck replied that  Dichter was yelling at her by email and should express herself more professionally.  Id. at ¶ 74.

On Monday, January 30, 2012, Pratt-Roebuck emailed Dichter to summon her to a 4:30 p.m. meeting.  Id. at ¶ 75.  Dichter agreed but asked that Presson be present.  Id. at ¶ 76.  At the meeting, Pratt-Roebuck handed Dichter a document citing her for insubordination, which Dichter refused to accept, attempting instead to address the reporting concerns.  Id. at ¶¶ 77, 78.  Pratt-Roebuck stood up and yelled at plaintiff, "This is my meeting."  Id. at ¶ 78.  Dichter replied, "Let's bring [Deputy Director] Dainette [Mintz] into the meeting right now and let her know

how f[***]ed HMIS really is." Id. at ¶ 79.[3]  Presson declared the meeting over and followed

Dichter to her office, where Dichter told her Presson needed to supervise Pratt-Roebuck more

closely.  Id. at ¶¶ 80, 81.

      At the next HMIS meeting on February 2, 2012, Dichter contends Pratt-Roebuck was

hostile to her, as a result of which Dichter emailed (1) Human Resources Director Raymond

Davis about the possibility of filing a grievance against Pratt-Roebuck, (2) the Chief Legal

Counsel about filing an ethical complaint, and (3) two City employees with oversight

responsibility for federally-funded stimulus grants, to request a meeting about her HPRP

reporting and compliance concerns.  Id. at ¶¶ 84, 85.

      On February 3, 2012, Dichter was invited to a meeting with Presson and Davis.   Id. at ¶

86. [4]  They informed her at the meeting that she was being terminated immediately for using

profanity in the January 30 meeting.  Id. at ¶ 88.  Dichter stated that the real reason was the

SELF investigation, which Davis denied knowing about -- and he then summoned two security

guards who escorted Dichter from the building.  Id. at ¶¶ 89, 90.  Dichter requested a written

statement of the reasons for her termination, which she received from PHMC on February 7,

2012.  Id. at ¶ 92.  The letter stated that she was being terminated for violating PHMC's Business

Conduct Policy ("Treat all employees fairly, with dignity and respect"), because she displayed

loud, disruptive and angry behavior and used profanity in the workplace.  Id. at Ex. 2.

      Dichter contends that the letter is full of contradictions and inaccuracies, including its

assertions that she worked as an HPRP Program Manager for PHMC since 2009, yet the City

decided to terminate her, and that her employment was "at will."  Id. at ¶ 93.  She states she was

never advised of PHMC's Business Conduct Policy.  Id.  She also maintains that she was never

---

[3] Alterations in original.
[4] Dichter erroneously gives this date as February 3, 2014 in the FAC.

given reasonable notice or an opportunity to be heard, in violation of Article VII, Chapter 3 of the City Charter, which provides that she (1) could only be disciplined for just cause, (2) was entitled to ten days' advance notice of any proposed discipline or dismissal, (3) had the right to respond and receive a further, final notice of discipline or dismissal, and (4) had a right of appeal.  Id. at ¶¶ 94, 95.  She was never given notice of her rights, which she alleges were concealed from her under the false pretense that she was not a City employee entitled to those benefits.  Id. at ¶ 96.  Dichter contends the reasons for her termination were pretextual, and that she was in fact terminated in retaliation for her lawful expression of concern about mismanagement.  Id. at ¶ 97.

Dichter filed suit in the Court of Common Pleas of Philadelphia County on September 24, 2014.  On October 1, 2014, the City filed a notice of removal based on the federal claims asserted.  See docket entry # 1.  On October 13, 2014, PHMC filed a motion to dismiss, and the City filed a similar motion the following day.  On October 28, 2014, the plaintiff responded in opposition.  On November 4, 2014, Dichter filed a thirteen-count first amended complaint, alleging breach of contract, First Amendment retaliation, conspiracy to deprive her of her civil rights, civil conspiracy, Due Process violations and wrongful discharge against both defendants, and violation of the City Charter and civil service regulations against the City.[5]  On November 17, 2014, the City filed a partial motion to dismiss as to the claims against it, that is, Count I (Breach of Contract); Count IV (First Amendment Retaliation); Count VI (Conspiracy to Deprive Plaintiff of her Civil Rights); Count VII (Violation of City Charter and Civil Service Regulations); Count VIII (Wrongful Discharge); Count XI (Due Process Violation); and Count

---

[5] PHMC contends plaintiff's amended complaint is untimely as it was filed after PHMC's motion to dismiss, without seeking leave of this Court.  See PHMC MTD at 1; see also Fed. R. Civ. P. 15(a)(1)(B).  We will, nonetheless, exercise our discretion to consider plaintiff's first amended complaint.

XII (Civil Conspiracy).  On November 18, 2014, PHMC sought dismissal of all counts against it.

III.     **Discussion**

A.     **The City's Motion to Dismiss**

The City moves to dismiss all claims against it.

1.     **Dichter's Breach of Contract Claim**

First, the City contends that Dichter was not a City employee -- but had she been, her status was that of an at-will employee.  City MTD at 4.  The City maintains that Dichter's allegation of an "oral" contract, which included an "implied convent [sic] of good faith and fair dealing" cannot support a breach of contract claim, id.; see also FAC at ¶ 101, and that this putative "oral" contract failed to specify terms or conditions between her and the City (and no contract is appended to her first amended complaint).  City MTD at 4, 5.  Further, the City argues, Dichter's allegation that it breached an implied covenant of good faith and fair dealing is irrelevant because there can be no such claim under Pennsylvania law when employment is at-will.  Id. at 6.

Dichter responds in opposition that the City's contention that she was not a City employee, based neither in law nor in her allegations, is premature.  Br. in Opp. to City at 6.  She urges that her complaint alleges she was an employee of both the City and PHMC, but the City was her real employer because it controlled almost every aspect of her employment and ultimately made the decision to terminate her.  Id. at 7, 8.  As to the terms of her employment, Dichter contends that the presumption of at-will employment may be rebutted by circumstances supporting the existence of an agreement, which she insists were the "promises and assurances" she received about the focus of her work, her responsibilities, and the expectation she would

10

report any fraud or mismanagement.  Id. at 9; see also FAC at ¶ 29.  She also points to her attendance at an OSH meeting in which she was assured that fiscal integrity was a City priority.  Br. in Opp. to City at 9; see also FAC at ¶ 30.  These allegations, she insists, make out a claim for breach of contract based on a form of "just cause" agreement restricting the City's ability to terminate her.  Br. in Opp. to City at 10.

We cannot agree with Dichter that she has made out a claim for breach of contract because she has failed to show that any agreement existed between her and the City.  Under Pennsylvania law, the presumption of at-will employment can be overcome if one of the following is established: (1) an agreement for definite duration, (2) an agreement specifying that the employee will be discharged for just cause only, (3) sufficient additional consideration, or (4) an applicable recognized public policy exception.  Janis v. AMP, Inc., 856 A.2d 140, 144 (Pa. Super. Ct. 2004).  It is well-established that when an arrangement does not contain a definite term, the presumption of at-will employment controls.  Rapagnani v. Judas Co., 736 A.2d 666, 670 (Pa. Super. Ct. 1999) (internal citation omitted).  "Definiteness is required."  Id.

Pennsylvania courts demand no less precision for "just cause" agreements.  In Luteran v. Loral Fairchild Corp., 688 A.2d 211 (Pa. Super. Ct. 1997), a handbook stating that a plaintiff would be discharged only for just cause did not create an implied contract because it did not contain a clear indication that the employer intended to overcome the at-will presumption.  The Superior Court concluded that the handbook was an aspirational statement that served merely an informational function.  Luteran, 688 A.2d at 214-15.  By contrast, in Veno v. Meredith, 515 A.2d 571, 580 (Pa. Super. Ct. 1986), the Superior Court held that sufficient additional consideration supported the finding of a "just cause" contract in the absence of an exact term for the contract.

Here, Dichter contends neither that the City specified a term for the contract she alleges existed, nor that she received any additional consideration.  She fails to show that the City agreed to a contract.  Because Dichter can point us to nothing that shows the City intended to overcome the at-will presumption by agreeing, implicitly or explicitly, to employ her under a contract, she cannot maintain her claim for breach of one.  We will dismiss this Count against the City.

### 2.  Dichter's First Amendment Retaliation Claim

Second, the City contends that Dichter's complaints to members of City management do not meet the legal requirements of protected speech as articulated in Hill v. Scranton, 411 F.3d 118 (3d Cir. 2005).  The City urges us to adopt the three-step analysis our Court of Appeals articulated in Hill:

> First, the employee must show that the activity is in fact protected. Second, the employee must show that the protected activity was a substantial factor in the alleged retaliatory action. Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct.

Id. at 125 (internal quotation marks and citations omitted).  As to the first prong, a public employee's speech is protected when the employee spoke as a citizen on a matter of public concern and the government employer lacked an adequate justification for treating the employee differently from any other member of the general public.  Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).  The City contends that Dichter spoke not as a citizen but as an employee in the performance of her official duties, based on knowledge acquired from her position as the HPRP Tracking Manager.  City MTD at 7.  It also maintains that her inappropriate conduct (using vulgarity to her superiors and being insubordinate to them) would have led to her separation from OSH despite her reports of

12

perceived irregularities.  Id.

Dichter responds in opposition that her amended complaint sufficiently alleges First Amendment retaliation because she claims she engaged in protected activity and that such activity was a substantial factor in her termination.  Br. in Opp. to City at 11; see also Kutztown, 455 F.3d at 241.  She urges us to consider the "content, form and context" of her concerns as revealed by the whole record.  See Br. in Opp. to City at 12; see also Gorum v. Sessoms, 561 F.3d 179, 187 (3d Cir. 2009) (citing Connick v. Myers, 461 U.S. 138, 147-48 (1983)).  She contends that she spoke as a citizen advocate, not in her official capacity, about matters of public concern unrelated to her HPRP reporting function.  Br. in Opp. to City at 13.  And she argues that the City's contention that she would have been terminated because of her inappropriate behavior regardless of her protected activity is an affirmative defense that we should not consider at this stage of the litigation.  Id. at 15.

Accepting as we must the truth of her allegations, we hold that Dichter has sufficiently alleged First Amendment retaliation.  Dichter states that her duties included reporting fiscal irregularities and unethical conduct relating to the use or reporting of grant funds.  See FAC at ¶ 29.  However, her expressed concerns over the contract awarded to the former SELF, Inc. individuals and the $327,000.00 budgeting error fell outside the purview of her job as program Tracking Manager -- which she described in her amended complaint as overseeing the HPRP periodic reports to HUD and the Commonwealth concerning the use of funds provided by the $21 million HPRP grant.  Id.  The wrongdoing she sought to bring to light involved a breach of public trust, not a private grievance, and, in light of the negative publicity already surrounding the City's homeless program, would have conveyed further cause for public concern.  She has sufficiently alleged a public concern whose validity cannot be dismissed without consideration of

the whole record.

We are also mindful that our Court of Appeals held in <u>Curinga v. City of Clairton</u>, 357 F.3d 305, 310 (3d Cir. 2004), that the question of whether the protected activity was a substantial factor in the alleged retaliatory action is a question of fact.  It is therefore not one we can dispose of as a matter of law, but is rather best suited to our consideration after the parties complete discovery.

Finally, we agree with Dichter that the City's argument concerning its reasons for her termination is an affirmative defense and thus is premature for us to consider at this stage of the litigation.  Accordingly, we will deny the City's motion to dismiss Dichter's First Amendment retaliation claim.

### 3.      <u>Dichter's Claim of Conspiracy Under 42 U.S.C. § 1983</u>

The City contends that Dichter advances only conclusory facts to allege a conspiracy with PHMC to terminate her in order to retaliate against her for exercising her First Amendment rights.  City MTD at 8.

Dichter responds in opposition that she has sufficiently alleged (1) a conspiracy involving state action, and (2) a deprivation of her civil rights in furtherance of the conspiracy by a party to the conspiracy.  Br. in Opp. to City at 15 (citing <u>Eichelman v. Lancaster Cnty.</u>, 510 F. Supp. 2d 377, 392 (E.D.Pa. 2007) (Strawbridge, M.J.)).  She contends that she has sufficiently alleged the defendants had a meeting of the minds about the terms of her employment with the intention of depriving her of rights and benefits she would otherwise have received as a City employee.  <u>Id.</u> at 15, 16.

We agree with the City that Dichter's allegations are insufficient to make plausible her conspiracy claim.  Our Court of Appeals has held that, to survive a Rule 12(b)(6) motion,

allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy -- which are agreement and concerted action.  Capogrosso v. The Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009); see also Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1206 (7th Cir. 1980) (holding it is not sufficient to allege that the private and state defendants merely acted in concert or with a common goal).  In short, a plaintiff must allege that the co-conspirators sought to deprive her of her constitutional rights under color of state law by virtue of a mutual understanding or agreement.  See, e.g. Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993); see also Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D.Pa. 1982) (Broderick, J.).  Our Court of Appeals has acknowledged that direct evidence of a conspiracy is rarely available -- indeed, "caution is advised in any pre-trial disposition of conspiracy allegations in civil rights actions," Capogrosso, 588 F.3d at 184-85.  Nonetheless, it emphasized that inferences cannot take the place of facts. Id. at 185; see also Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977) (The complaint must state with specificity facts that show the existence and scope of the alleged conspiracy).  Dichter has failed to plead any facts to substantiate her allegation that the defendants agreed to deprive her of her civil rights and therefore her claim against the City for conspiracy cannot stand.

### 4.    Dichter's Claim That The City Violated Its Charter And Civil Service Requirements

Next, the City argues that Dichter cannot prevail on her claim that she was a civil service employee and that the City denied her of the rights associated with being one as it claims she alleges none of the facts that would establish her employment status as a City employee, including:

(1) applying with the City's Office of Human Resources;

(2) taking the Civil Service examination to get the job;

(3) being listed among eligible candidates;

(4) being appointed to the position from the list by OSH; and

(5) being on the City's payroll.

City MTD at 9. Therefore, the City argues, her claim that she was a civil servant entitled to protections and appeal rights under the Civil Service Regulations is implausible and must be dismissed.

Dichter responds that her OSH position was a civil service position both in substance and under the express terms of applicable provisions of the City Charter and Regulations. Br. in Opp. to City at 16. She argues that the City's contention that she was not a civil servant because she did not go through such formalities as taking the Civil Service exam reinforces her claim that the City employed her through PHMC to evade the Civil Service requirements of the City Charter. Id. And she cites provision §7-301 of the City Charter, which defines those officers and employees of the City exempt from civil service, to show no exception applies to her position. Id. at 17.

We agree with the City that Dichter cannot prevail on her claim that she was a civil service employee. Dichter does not even contend that her position as HPRP Tracking Manager was covered by civil service regulations. And she alleges no facts that could establish her as a civil servant (indeed, she concedes that she did not take the Civil Service exam). Br. in Opp. to City at 16. Rather, she maintains that she applied to PHMC, which paid her salary and benefits, funded by a City contract, although she worked in City offices for a supervisor employed by the City. See FAC at ¶¶ 20-21. We will therefore dismiss this claim against the City.

16

**5.     Dichter's Claim For Wrongful Discharge
In Violation Of Public Policy and Civil Conspiracy**

The City next argues that Dichter's alternative claim that the City wrongfully discharged her against public policy is precluded by the Political Subdivision Tort Claims Act which immunizes municipalities and municipal employees from all state law claims except for eight narrowly construed negligence claims.  City MTD at 9; see also 42 Pa. Cons. Stat. Ann. §§ 8541-64.  The City contends Dichter's civil conspiracy claim fails for the same reason, (i.e., that the City is immunized from liability for its employees' intentional torts) and seeks dismissal with prejudice.

Dichter concedes that the wrongful discharge "label suggests a tort claim to which the Political Subdivision Tort Claims Act applies, and for which there is no exception."  Br. in Opp. to City at 18.  Accordingly, we dismiss Dichter's claim for wrongful discharge.  She does not contest the City's motion to dismiss her separate civil conspiracy claim under Count XII and we will therefore grant the City's motion as to this Count as well.

**6.     Dichter's Claim For A Due Process
Violation Pursuant To 42 U.S.C. § 1983**

Finally, the City argues that Dichter's claim that she had a constitutionally protected property interest in her job must fail because she was an at-will employee.  City MTD at 11.  The City also contends that she is not entitled to procedural due process rights under Section 1983 because she was PHMC's employee, not a City civil service employee.  Id.

Dichter reiterates her allegation that she had a contract that curtailed the City's right to terminate her.  She grounds in that putative contract her claim to a property interest in her employment.  Br. in Opp. to City at 19.  She also argues that the First Amendment rights we recognized are a liberty interest protected by the Due Process Clause.  Id.

17

As we explained above, Dichter was an at-will employee.  Our Court of Appeals has held that once a Court determines that a public employee held her position at the will and pleasure of the governmental entity, such a finding necessarily establishes that the employee had no property interest in the job sufficient to trigger Due Process concerns.  Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (quoting Bishop v. Wood, 426 U.S. 341, 346 n.8 (1976)).  Whatever First Amendment right we recognize that she might have (as yet to be determined through discovery) cannot engender a Due Process right that is otherwise absent.  We will therefore grant the City's motion to dismiss Dichter's claim of a Due Process violation.

### B.    PHMC's Motion to Dismiss

PHMC seeks dismissal of all claims against it.

### 1.    Dichter's Claims Pursuant To 42 U.S.C. § 1983

PHMC argues that Dichter's constitutional claims for First Amendment retaliation (Count III), conspiracy to deprive plaintiff of her civil rights (Count V), and violation of her Due Process rights (Count X), should be dismissed because PHMC is not a state actor under Section 1983 and Dichter was an at-will employee.   PHMC MTD at unnumbered page 6.

We consider first PHMC's argument as to Dichter's Due Process claim.  PHMC contends that her claim of a property interest in her job through (1) her contractual relationship with the City and PHMC, (2) the Pennsylvania Whistleblower law ("PWL"), and (3) Article VII, Chapter 3 of the City Charter and related Civil Service regulations, see FAC at ¶ 146, is unsupported by any contract with PHMC.  PHMC MTD at unnumbered page 7.  It also argues that the PWL's 180-day statute of limitations had expired well before Dichter filed her suit in 2014.  Id.   And PHMC maintains that Dichter must show that her appointment as HPRP's Tracking Manager was

obtained in accordance with Pennsylvania civil service laws -- that is, after taking the civil service exam for a position classified as civil service -- before she can claim the protection of those laws.  Id. at 9.  PHMC contends Dichter cannot do that.  PHMC therefore reasons that Dichter has provided no basis in fact suggesting that her position was entitled to such protection. Id. at 10.

Dichter maintains in opposition that she had a property interest in her job through (1) her contractual relationship with the City and PHMC, (2) the PWL, and (3) the City Charter and Civil Service regulations.  Br. in Opp. to PHMC at 6-11.  As discussed in detail above, we determined that Dichter was an at-will employee who did not have a property interest in her position and therefore cannot assert a Due Process violation.  We will therefore grant PHMC's motion to dismiss as to Count X, the Due Process violation.

We consider next Dichter's claim that PHMC conspired to deprive her of her civil rights under 42 U.S.C. § 1983.  PHMC urges us to find that it is not a state actor by relying on our decision in Fleck v. Trustees of Univ. of Pennsylvania, 995 F. Supp. 2d 390 (E.D.Pa. 2014), which reviewed the tests for determining whether an entity is a state actor exercising power by virtue of state law and clothed with the authority of the state.  See also Groman v. Twp. of Manalapan, 47 F.3d 628, 639 n. 17 (3d Cir. 1995).  PHMC is a private non-profit providing services to the City on a contractual basis, which it contends is an insufficient basis for inferring a close nexus to City government.  PHMC MTD at unnumbered page 11.  It also argues it played no role in Dichter's termination, but merely ratified it through issuance of a termination letter after the fact.  Id. at 12; see also FAC at ¶ 92.  It contends its acquiescence to Dichter's termination is insufficient to render it a state actor under a joint participation theory .  PHMC MTD at unnumbered page at 12.  It also maintains that it is not a state actor through any

19

symbiotic relationship or close nexus with the City.  Id. at 13.

Dichter responds in opposition that PHMC's hiring of her was a state action authorized and delegated by the City, and it is therefore a state actor under any one of several Supreme Court analyses, including the symbiotic, nexus or entwinement theories.  Id. at 13; see also FAC at Ex. 1.  Similarly, she claims PHMC terminated Dichter on the City's say-so.  Br. in Opp. to PHMC at 13; see also FAC at ¶¶ 92, 93, and 98.   Dichter contends that PHMC was "a mere puppet of the City" that had to do as the City instructed with respect to Dichter's employment.  Br. in Opp. to PHMC at 14.

Section 1983 provides in relevant part that

> Every person who, under color of any statute. . . of any State . . .
> subjects, or causes to be subjected, any citizen of the United States
> . . . to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured[.]

42 U.S.C. §1983.  This statute "is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute."  DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005).  To establish liability under Section 1983, the plaintiff must show that her termination occurred while PHMC acted under color of state law.

The Supreme Court has not drawn a bright line between state actors and private persons. See Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005).  Rather, it has devised a series of tests to determine whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Id. (quoting Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)) (internal citation and quotation marks omitted).  Our Court of Appeals in Leshko held the state actor inquiry should be put into two broad categories -- those circumstances on the one hand

involving an activity that is significantly encouraged by the state or where the state is a joint

participant and those on the other involving an actor who is either controlled by the state,

performing a function the state has delegated, or is entwined with governmental policies or

management.  Leshko, 423 F.3d at 340.  "[T]the heart of the state action inquiry," our Court of

Appeals stresses, "is to discern if the defendant exercised power possessed by virtue of state law

and made possible only because the wrongdoer is clothed with the authority of state law."

Groman, 47 F.3d at  639 n.17 (3d Cir. 1995) (internal citations and quotation marks omitted).

Thus, under either circumstance, the state-action inquiry is a fact-intensive one.  See, e.g.,

Brentwood Acad., 531 U.S. at 295.  It is therefore not susceptible to dismissal before discovery

on the assumption that the allegations in the complaint are true, unless the plaintiff fails to allege

facts that raise a right to relief above the speculative level.

At this stage in the litigation, Dichter must only establish that her claims concerning

PHMC are plausible.  She alleges that she contacted Dainette Mintz, a City official, about the

HUD grant to fund the homeless program.  FAC at ¶ 17.  She met with Mintz and other City

representatives.  Id. at ¶ 18.  Mintz offered her the position of Tracking Manager at $75,000 a

year plus benefits.  Id.  The City wrote a letter to PHMC to "serve as authorization" for Dichter's

hiring.  Id. at ¶ 19.  During her employment, Dichter alleges, she worked in a City office and was

supervised by City employees.  Id. at ¶ 20.  Nonetheless, she also contends that her salary and

benefits were paid by PHMC under a contract with the City.  Id. at ¶ 21.  When she was

terminated, the written statement of the reasons for that termination came from PHMC, not the

City.  Id. at ¶ 92.  The letter stated that she had worked as a Program Manager for PHMC since

2009 and was terminated for her violation of a PHMC business conduct policy.  Ex. 2.

These allegations plausibly portray PHMC as an entity entwined with the City insofar as

the management of the homeless program was concerned and Dichter's role therein.  Dichter was a PHMC employee working under the City's supervision -- despite both defendants' efforts to disavow their involvement with her employment, see PHMC MTD at unnumbered page 3; see also City MTD at 4.  Dichter also plausibly alleges that the City pressed PHMC to hire and fire her, actions that may well represent a close nexus between the City and the private contractor. We cannot hold, therefore, that as a matter of law, PHMC is not a state actor.

Nonetheless, Dichter's claim of conspiracy under Section 1983 against PHMC suffers exactly the same deficiencies as her conspiracy claim against the City.  We reiterate that our Court of Appeals explained that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy -- agreement and concerted action to survive a Rule 12(b)(6) motion.  Capogrosso, 588 F.3d  at 185.  In short, a plaintiff must allege that the alleged co-conspirators sought to deprive her of her constitutional rights under color of state law by virtue of a mutual understanding or agreement.  Inferences cannot supplant facts. Id. As Dichter has failed to plead any facts to substantiate her allegation that the defendants agreed to deprive her of her civil rights, her claim against the City for conspiracy cannot stand.

Finally, PHMC argues that Dichter's First Amendment retaliation claim should be dismissed because her protected activity dovetailed with her job responsibilities and there is no allegation that PHMC was motivated to end her employment out of retaliatory animus.  PHMC MTD at unnumbered page 14.  PHMC points to Dichter's allegation that her job duties included reporting suspected fraud and mismanagement, which, it contends, included the protected activity concerning complaints of (1) OSH's investment in SELF, Inc. and New Roads to Success, (2) compliance with the HUD reporting requirements, (3) the misallocation of $327,000 of HUD HPRP grant monies, and (4) these topics to the Department of Health.  Id. at

unnumbered page 15.  PHMC also argues that Dichter's putative protected activity was not directed at or communicated to PHMC.  Id. at unnumbered page 17.  Because Dichter alleged that PHMC's involvement in her employment was limited to her job application, receipt of paychecks and termination letter, PHMC maintains that she has failed to allege that PHMC had knowledge of her protected activity and led to her termination.

Dichter responds that her concerns were beyond those required to fulfill her job.  Br. in Opp. to PHMC at 18.  She points us to her allegations of waste and mismanagement during the course of her tenure, including the contract awarded to the former Self, Inc. individuals and the $327,000.00 budgeting error, which fell outside the purview of her job.  Id. at 19.  She also observes that her termination occurred at the same time such mismanagement was reported in the press.  Id.

Although Dichter's allegations about PHMC's role are thinner than her contentions about the City, she has at this juncture sufficiently alleged First Amendment retaliation because she has plausibly pled that PHMC's actions concerning her employment were entwined with the City's decisions.  We also agree, as stated above, that the wrongdoing she pointed out involved a breach of public trust, not a private grievance, and, in light of the negative publicity already surrounding the City's homeless program, would have conveyed further cause for concern to a private contractor as well as the City.  She has sufficiently alleged an issue of public concern whose validity cannot be dismissed without consideration of the whole record.  As the question of whether the protected activity was a substantial factor in the alleged retaliatory action is a question of fact, it is better suited to our consideration after the parties complete discovery.

Accordingly, we will deny PHMC's motion to dismiss Dichter's First Amendment retaliation claim.

2.      **Dichter's Conspiracy Claims**

PHMC next argues that Dichter's conspiracy claims must be dismissed because there is no allegation suggesting that the City and PHMC had a concerted plan concerning her.  PHMC MTD at unnumbered page 19.  It urges that there is no factual basis to show an agreement or a meeting of the minds with the City and therefore her claim must be dismissed.

Dichter responds in opposition that she has sufficiently alleged a meeting of the minds because her employment arrangement was structured with the intent of depriving her of the rights and benefits of City employment.  Br. in Opp. to PHMC at 22.

We have already determined that her claim of conspiracy to deprive her of her civil rights must fail.  The same flaws undermine her civil conspiracy claim against PHMC.  Civil conspiracy occurs where two or more persons combine or agree to commit an unlawful act or to do an otherwise lawful act by unlawful means.  Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979).  To state a cause of action for conspiracy the complaint must allege: (1) the combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of a common purpose, and (3) actual legal damage.  McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. Ct. 2000).  Our Court of Appeals has made it clear that it is not enough for a plaintiff to merely assert conclusory allegations concerning the existence of such a conspiracy.  Capogrosso, 588 F.3d at 185.  A plaintiff must do more than show that the private and state actors might have had a common goal or acted in concert, but must allege with sufficient particularity and specific material facts that the defendants reached some understanding or agreement.

As we held above, Dichter falls short of alleging specific material facts, and we will

therefore grant PHMC's motion as to her civil conspiracy claim as well.

### 3. Dichter's Wrongful Discharge Claim

PHMC contends that Dichter's wrongful discharge claim, in violation of Article VII, Chapter 3, of the City Charter and related Civil Service regulations, must fail because she was an at-will employee, not a civil servant entitled to Due Process protections.  PHMC MTD at unnumbered page 20.

Dichter responds in opposition that her termination violated a clearly-defined mandate of public policy and she reiterates her allegation that the arrangement between PHMC and the City was intended to circumvent the City's Civil Service protections.  Br. in Opp. to PHMC at 22, 23. She claims this allegation seeks an alternative form of relief in the event the City can skirt its obligations to her because of the "formality" of her employment through PHMC or her failure to take the Civil Service exam.  Id. at 24.

We agree with PHMC.  As we have explained with respect to the City, Dichter's status as an at-will employee who was not a civil servant means her claim for wrongful discharge based on any entitlement to Civil Service protections must fail.  We will dismiss Dichter's claim for wrongful discharge against PHMC.

### 4. Dichter's Breach Of Contract Claim

Finally, PHMC urges that we dismiss Dichter's breach of contract claim because the amended complaint alleges no agreement between these two parties and, indeed, enumerates Dichter's limited interaction with PHMC.  PHMC MTD at unnumbered page 21, 22.[6]

---

[6] PHMC also points out the at-will disclaimer on the job application Dichter filled out.  PHMC MTD at unnumbered 22; see also Ex. B.  However, in a motion to dismiss, we may only consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of

Dichter reasserts that she had an employment contract with PHMC, and points us to the portion of her complaint in which she details the "promises and assurances" she received in meetings with City officials.

As we have stated above, this claim falls far short of alleging a contract.  Dichter was an at-will employee and may therefore not pursue a breach of contract claim against PHMC.  We thus will grant PHMC's motion as to this claim.

### C.   <u>Dichter's Motion To Amend</u>

Dichter moves to amend her first amended complaint to assert an alternative claim that the evasion of the Civil Service provisions of the City Charter is itself a violation of the Charter, which she contends would not be a tort claim for wrongful discharge precluded by the Political Subdivision Tort Claims Act.  Br. in Opp. to City at 19.  She also seeks permission to amend in her opposition to PHMC.

Neither party opposed Dichter's motions.

It is well-established that the decision to grant leave is within our discretion.  <u>In re Burlington</u>, 114 F.3d. at 1434.  Although Fed. R. Civ. P. 15(a)(2) urges us to freely give a plaintiff leave to amend when justice so requires, we may deny such leave when amendment would be futile.  <u>Foman</u>, 371 U.S. at 182 (1962).  Futility exists when a complaint, as amended, would fail to state a claim upon which relief could be granted.  <u>Holst</u>, 290 F. App'x at 510.  As we stated above, if a claim may be dismissed under Rule 12(b)(6), leave to amend must be granted unless the amendment would not cure the deficiency.

---

public record (such as any undisputedly authentic document that a defendant attaches as an exhibit if the plaintiff's claims are based on the document).  <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  The job application is not such an undisputedly authentic document and we will therefore not consider it.

Permitting Dichter to amend her complaint as she wishes would be futile because we have already determined that she was not a civil servant.   Therefore, she may not sue for any harm caused by the City Charter violation she seeks to allege.  See Phila. Recreation Advisory Council (PRAC) v. City of Phila., 2005 WL 755726 (E.D.Pa. Mar. 31, 2005) (Pollak, J.) (holding that plaintiff lacked standing to sue because it could not claim the invasion of a particularized legally-protected interest resulted in an injury in fact).  Because Dichter was not a civil servant and therefore had no legally-protected interest in her job, she lacks standing to claim harm by a City Charter violation.  No amendment we permit could cure that critical deficiency in Dichter's complaint and enable her to claim that she was owed protections comparable to those afforded a City civil servant.  We will therefore deny her motion to amend her complaint.

An appropriate Order follows.

BY THE COURT:

/S/ STEWART DALZELL, J.